IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSERA, INC., | |
| Plaintiff, | No. C 05-4063 CW |
| v. | ORDER GRANTING IN PART THE ASP DEFENDANTS' MOTION FOR A PRELIMINARY INJUNCTION |
| ADVANCED MICRO DEVICES, INC., et al., | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

Defendants Siliconware Precision Industries Co., Ltd., Siliconware USA, Inc., STATS ChipPAC Ltd., STATS ChipPAC (BVI) Limited, STATS ChipPAC, Inc., Advanced Semiconductor Engineering, Inc., ASE (U.S.) Inc., ChipMOS Technologies, Inc. and ChipMOS, U.S.A., Inc. (collectively, the ASP Defendants) move for a preliminary injunction prohibiting Plaintiff Tessera, Inc. from initiating an action against them before the International Trade Commission (ITC), or in any other way seeking relief against them outside of California. Plaintiff opposes the ASP Defendants'

motion. The matter was heard on October 23, 2007. Having considered oral argument and all of the papers submitted by the parties, the Court grants the ASP Defendants' motion, but issues an injunction with narrower scope than that which the ASP Defendants seek.

## BACKGROUND

Plaintiff develops and patents semiconductor packaging products. The ASP Defendants are assembly service providers; they provide integrated circuit packaging services that utilize Plaintiff's technology. In 1998 and 1999, Plaintiff entered into license agreements with four of the ASP Defendants: Advanced Semiconductor Engineering, Inc., ChipMOS Technologies, Inc., Siliconware Precision Industries Co., Ltd., and ChipPAC, Inc.[1]  The agreements gave these Defendants the right to use certain technologies covered by Plaintiff's patents. Each of the agreements contains an identically worded governing law provision that reads in part:

> Both parties shall use reasonable efforts to resolve by mutual agreement any disputes, controversies, claims or differences which may arise from, under, out of or in connection with this Agreement. If such disputes, controversies, claims or differences cannot be settled between the parties, any litigation between the parties relating to this Agreement shall take place in San Jose, California. The parties hereby consent to personal

---

[1] Plaintiff argues that the other ASP Defendants are not subject to the terms of the license agreements because they are not parties to them. This is inconsistent with Plaintiff's implied position that the other ASP Defendants are "licensee affiliates," as that term is used in the license agreements, and thus are bound by the terms of the agreements. Indeed, Plaintiff sues <u>all</u> of the ASP Defendants for breach of the license agreements. Plaintiff cannot now claim that certain of these Defendants are not covered by those agreements.

>     jurisdiction and venue in the state and federal courts of
>     California.

Trinh Dec. Ex 2 at 13.

Plaintiff brought this lawsuit in 2005.  The second amended complaint charges the ASP Defendants, as well as other Defendants, with both breaching their license agreements and infringing Plaintiff's patents without a license.  In April, 2007, Plaintiff filed a complaint in the ITC against, among others, the non-ASP Defendants AMD, Spansion and STMicroelectronics.  These three Defendants subsequently moved the Court for a stay of this entire action pending a final decision in the ITC proceedings.  In their motion, they stated (and Plaintiff did not dispute) that:

>     In both actions brought by Tessera, the accused products
>     are the same. Moreover, since all the asserted Tessera
>     patents, including the two patents asserted at the ITC
>     and the four patents asserted against the movants in this
>     Court, have the same specification and relate to the same
>     invention, there are many issues of claim construction,
>     infringement, validity and enforceability that will
>     overlap in both cases.

Docket No. 443 at 2.

The ASP Defendants first filed a statement of non-opposition to the other Defendants' motion.  In that statement, they noted that they "could not join that motion because Tessera did not name them as respondents in its ITC complaint" and, therefore, they were not entitled to the automatic stay provided to ITC respondents pursuant to 28 U.S.C. § 1659.  Docket No. 464.  They later signed a stipulation agreeing to a stay of this action in its entirety pending a final ITC decision.  Docket No. 466.

Plaintiff claims that discovery was needed in the ITC proceeding in order to determine whether the ASP Defendants were

3

1  responsible for providing packaging services during the manufacture
2  of the accused products.  Plaintiff claims that, for this reason,
3  it did not name the ASP Defendants as respondents in the original
4  ITC complaint.  However, on September 7, 2007, Plaintiff filed a
5  motion to modify the ITC's protective order.  The ASP Defendants
6  state that, given Plaintiff's motion, they have reason to believe
7  that Plaintiff intends either to file a new ITC complaint against
8  them or to add them as respondents in the existing proceeding.
9  They now move for a preliminary injunction prohibiting Plaintiff
10 from doing so.

LEGAL STANDARD

12 A party seeking a preliminary injunction must establish: (1) a
13 reasonable likelihood of success on the merits; (2) irreparable
14 harm if an injunction is not granted; (3) a balance of hardships
15 tipping in its favor; and (4) a public interest favoring the
16 injunction.  Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1374
17 (Fed. Cir. 2006).  These factors can be established by
18 demonstrating either "(1) a combination of probable success on the
19 merits and the possibility of irreparable injury or (2) that
20 serious questions are raised and the balance of hardships tips
21 sharply in its favor."  Mikohn Gaming Corp. v. Acres Gaming, Inc.,
22 165 F.3d 891, 895 (Fed. Cir. 1998) (citing Dollar Rent A Car v.
23 Travelers Indem. Co., 774 F.2d 1371, 1374-75 (9th Cir. 1985)).
24 "These are not two distinct tests, but the poles of a 'continuum in
25 which the required showing of harm varies inversely with the
26 required showing of meritoriousness.'"  Id. (quoting Rodeo
27 Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1217 (9th Cir.

4

1987).

DISCUSSION

I.   Procedural Ripeness

Plaintiff argues that because it has not yet filed an ITC complaint against the ASP Defendants, their motion is not ripe for adjudication.  It correctly notes that the ASP Defendants provide little evidence supporting their contention that Plaintiff is about to file a complaint against them with the ITC.

It is true that a preliminary injunction "cannot be issued to prevent a mere speculative injury."  Regents of Univ. of Cal. v. Am. Broadcasting Cos., Inc., 747 F.2d 511, 524 (9th Cir. 1984). However, the threat of injury here is neither remote nor speculative.  It is obvious from this lawsuit that Plaintiff believes that the ASP Defendants' products infringe its patents. Based on Plaintiff's own admissions, it is not unlikely that it will seek to add the ASP Defendants to its ITC action once sufficient discovery has been completed.  The Court finds the threat of harm sufficiently imminent to support a preliminary injunction.  The Court need not wait until Plaintiff actually files a complaint against the ASP Defendants identifying specific products in order to adjudicate the ASP Defendants' motion. Indeed, at that point it may be too late to prevent the harm the ASP Defendants seek to avoid, given that the ITC may continue to investigate a matter even after a complaint is withdrawn.

II.  Collateral Estoppel

The ASP Defendants argue that Plaintiff is collaterally estopped from opposing their motion by virtue of its involvement in

5

Texas Instruments v. Tessera, Inc., 231 F.3d 1325 (Fed. Cir. 2000). In that case, the Federal Circuit was presented with a set of facts similar to those here. Tessera had attempted to initiate an ITC action against Texas Instruments (TI) while a related patent proceeding was underway in the Central District of California. Id. at 1327. The license agreement between the parties contained a governing law provision almost identical to the one here. See id. On appeal of the district court's denial of TI's motion for a preliminary injunction, the Federal Circuit found that the forum selection clause was enforceable and required that all litigation activity related to the license agreement take place in California. Id. at 1326. After the case was remanded and transferred to the Northern District of California, this Court granted TI's motion for a preliminary injunction and enjoined Tessera from further pursuing the ITC action. Order Granting Plaintiff's Renewed Motion for Preliminary Injunction and Motion for Preliminary Injunction Regarding Its Customers, dated Mar. 6, 2001, Case No. C 00-2114.

The doctrine of collateral estoppel provides that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party in the first case. Allen v. McCurry, 449 U.S. 90, 94 (1980). A prior decision has preclusive effect when:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

6

1  Kourtis v. Cameron, 419 F.3d 989, 994 (9th Cir. 2005) (quoting
2  Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000).

3      The Federal Circuit in Texas Instruments decided two relevant
4  issues with respect to the forum selection clause.  First, it
5  decided that, given the parties' familiarity with patent disputes,
6  the term "litigation" in the forum selection clause encompassed
7  proceedings before the ITC.  231 F.3d at 1331.  This issue is not
8  disputed here.

9      Second, Texas Instruments addressed governing law clauses
10 employing language such as that in Tessera's license agreement with
11 TI, which covered all disputes that "may arise from, under, out of
12 or in connection with" the agreement.  The court found that when a
13 license agreement exists, all legal disputes, including patent
14 disputes, related to the licensed products can be said to "arise
15 from" it.  Id.  However, while this holding is binding precedent,
16 it does not estop Tessera because the license agreement here is
17 different from the agreement between Tessera and TI in a crucial
18 respect, as discussed below.

19     The Federal Circuit made no finding on irreparable harm with
20 respect to TI's motion for a preliminary injunction.  Rather, it
21 remanded the case to this Court so that it could make additional
22 findings on this issue.  On remand, the Court found that the
23 possibility of irreparable harm existed.  However, even if such a
24 finding made in the course of a preliminary injunction were
25 entitled to preclusive effect, the finding of irreparable harm was
26 based on the specific facts in that lawsuit.  While the facts here,
27 and thus the issues here, are similar, they are not identical to

7

those in Texas Instruments; both the procedural posture and the relationships among Plaintiff, the ASP Defendants and their customers differ.  Accordingly, while this Court's decision in Texas Instruments will serve as precedent when analyzing whether irreparable harm exists here, it does not serve as a basis for collateral estoppel.  Accordingly, Plaintiff is not collaterally estopped from opposing the ASP Defendants' motion.

III. Judicial Estoppel

Plaintiff argues that the ASP Defendants should be estopped from requesting that the Court enforce the forum selection clause because they previously consented to a stay of these proceedings pending a final decision in the ITC.  Judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).  In order for the doctrine to apply, however, the party's later position must be "clearly inconsistent" with its earlier position.  Id.; see also Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007) (setting out other factors supporting the application of judicial estoppel).

Here, the ASP Defendants did not take any action that is clearly inconsistent with their present request for enforcement of the forum selection clause.  Although they consented to a stay of

8

this action so that the ITC proceedings could go forward without them, they did not consent to being named as respondents in that action.  Plaintiff makes the valid point that the ASP Defendants had every reason to suspect that their products would be implicated in the ITC proceeding.  The ASP Defendants might have raised the issue of their opposition to being named as respondents in the ITC proceeding when Plaintiff first initiated it.  Nonetheless, failing to do so is not clearly inconsistent with their present motion.  Thus, the Court can find no basis for judicial estoppel.

IV.  Preliminary Injunction Factors

Plaintiff asserts that the ASP Defendants are unlikely to succeed on the merits of their claim because the forum selection clause does not bar its anticipated ITC action.  As noted above, the clause provides that any disputes "which may arise from, under, out of or in connection with" the license agreement shall be litigated exclusively in California.

Like the forum selection clause in <u>Texas Instruments</u>, the clause here "is not limited to license related issues such as the amount of royalty due, term of agreement, and cross-licensing." 231 F.3d at 1331.  Rather, it is worded so as to encompass any type of dispute or disagreement arising from or relating to the agreement.  Where there is a license agreement between a patent holder and an alleged infringer, <u>Texas Instruments</u> holds that infringement disputes concerning products that are even arguably licensed do "arise from" the agreement as a matter of law.  <u>Id.</u>

However, the relevant provisions of the license agreements here, unlike their counterparts in <u>Texas Instruments</u>, restrict the

9

1  licensees' use of the applicable patents to certain types of
2  products and applications.  Specifically, the ASP Defendants are
3  limited to using the patented technology to produce tape-based
4  packaging products.  Lo Dec. Ex. 3 at 3.  In this sense, the
5  agreements carve out and license only a subset of the realm covered
6  by the patents' claims, excluding from the licenses' scope entire
7  fields of use.  Thus, products which are not tape-based are
8  excluded from the license.

9  The ASP Defendants urge an expansive reading of <u>Texas
10 Instruments</u>.  According to them, the decision stands for the
11 proposition that whenever a patent is the subject of a license
12 agreement, any dispute over that patent is subject to the
13 agreement's governing law clause.  But <u>Texas Instruments</u> dealt with
14 a license which granted rights that, in all relevant respects, were
15 coterminous with the claims of the licensed patents.  <u>See</u> Lo Dec.
16 Ex. 5.  In that case, TI argued that the accused products did not
17 fall within the scope of the license agreement because they did not
18 infringe the licensed patents, and vice-versa.  <u>See</u> Order on Cross-
19 Motions for Summary Judgment on Patent Issues, TI's Motion to
20 Dismiss and Tessera's Motion for Summary Judgment on Contract
21 Issues, dated Nov. 14, 2001, No. C 00-2114.  The issue of
22 infringement was inextricably linked with the terms of the license
23 agreement, and therefore "arose from" it.

24 This case presents a different type of license agreement.
25 Here, unlike in <u>Texas Instruments</u>, it is possible for a product
26 produced by the ASP Defendant to infringe a Tessera patent licensed
27 to them, while still falling outside the scope of the license

10

agreements. An infringement dispute over a product that is clearly not licensed cannot be said to arise from the license agreement. The reasoning in <u>Texas Instruments</u> does not apply to this scenario, and the Court can identify no sound legal theory for subjecting such a dispute to a forum selection clause in an unrelated contract. Accordingly, the Court finds that <u>Texas Instruments</u> holds that when a product is <u>even arguably</u> the subject of a license agreement containing a forum selection clause, the clause applies not just to disputes over licensing issues such as royalties or the terms of the agreement, but also to related patent disputes such as the scope of the patent itself, whether the products in question infringe the patent, or whether the patent is valid. It does not follow from this holding that disputes over accused products that both parties agree are not covered by the license agreement should be governed by the forum selection clause. The ASP Defendants thus have a high likelihood of success on the merits, but only if the products that are the subject of any ITC proceeding are arguably within the scope of their licenses.

    Plaintiff also argues that the ASP Defendants will not be irreparably harmed by the initiation of ITC proceedings. Citing <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974), Plaintiff notes that litigation expenses ordinarily do not constitute irreparable harm because they can be reimbursed. However, this does not take into account that the ITC proceedings could result in an exclusion order barring the importation of the ASP Defendants' products. There is a high likelihood that even a temporary ban on imports would disrupt the ASP Defendants' business and damage relations with

11

their customers.  These harms cannot readily be quantified, and thus are irreparable.

In contrast, Plaintiff stands to face little hardship by being forced to litigate its claims against the ASP Defendants in this Court.  Its primary hardship is having to wait until the conclusion of the ITC proceedings before litigating the remainder of its claims in this Court, thereby delaying an ultimate decision.  Yet Plaintiff initiated the proceedings in the ITC after already having filed this lawsuit and despite the forum selection clause in its license agreements with the ASP Defendants.  Plaintiff then consented to a stay of the entire proceedings in this Court pending an ITC determination.  Plaintiff cannot now claim to face great hardship as a result of its own litigation strategy.  Thus, the balance of hardships tilts in the ASP Defendants' favor.

Finally, public policy generally favors the enforcement of forum selection clauses so long as they are not unreasonable.  See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 280 (9th Cir. 1984).  It is true that in this case, the interests of economy weigh against granting the ASP Defendants' motion.  It is certainly more efficient for the ITC to adjudicate Plaintiff's claims against the ASP Defendants and the other Defendants at the same time, in that the same patents and issues will presumably be involved.  Still, the wastefulness of duplicative proceedings and the risk of inconsistent decisions are lessened somewhat by the stay currently in effect in this action.  Accordingly, the public interest provides no compelling reason to deny Plaintiff's motion.

12

In sum, the factors governing preliminary injunctions strongly favor granting the ASP Defendants' motion, but only with respect to products that are arguably within the scope of their license agreements. Plaintiff assures the Court that it intends to pursue in the ITC only infringement claims based on products that are clearly not licensed. Yet because Plaintiff has not identified those products, the Court cannot determine whether they clearly fall outside of the fields of use that are covered by the license agreements. Plaintiff has agreed to abide by the forum selection clause if the ASP Defendants argue that the accused products fall within the scope of the agreements.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART the ASP Defendants' motion for a preliminary injunction (Docket No. 489). Plaintiff is enjoined from filing a complaint against the ASP Defendants in the ITC, or in any other way seeking relief against them outside of California, accusing of infringement any of the ASP Defendants' products that are arguably covered by a license agreement with Plaintiff. Before filing any complaint against the ASP Defendants, Plaintiff must give them notice of its proposed action, accompanied by a copy of the proposed complaint. The notice must identify the accused products and demonstrate that they do not fall within the scope of Plaintiff's license agreements with the ASP Defendants. The ASP Defendants may respond to the notice within ten days. If they take the position that the products are covered by their licenses, Plaintiff may not bring its proposed action. If they do not, Plaintiff will be permitted to proceed

13

with its action.  If a dispute arises, either party may apply for relief from this Court.

IT IS SO ORDERED.

Dated: 11/1/07

CLAUDIA WILKEN
United States District Judge