1  Gregory P. Stone (SBN 078329) (gregory.stone@mto.com)
   Ted G. Dane (SBN 143195) (ted.dane@mto.com)
2  Katherine K. Huang (SBN 219798) (katherine.huang@mto.com)
   Andrew Song (SBN 236588) (andrew.song@mto.com)
3  L. Ashley Aull (SBN 257020) (ashley.aull@mto.com)
   Eric P. Tuttle (SBN 248440) (eric.tuttle@mto.com)
4  **Munger Tolles & Olson LLP**
   355 S. Grand Ave., 35th Fl.
5  Los Angeles, CA 90071-1560
   Tel: (213) 683-9100
6  Fax: (213) 687-3702

7
   Fred H. Bartlit, Jr. (Pro Hac Vice) (fred.bartlit@bartlit-beck.com)
8  Eric R. Olson (Pro Hac Vice) (eric.olson@bartlit-beck.com)
   Sean Grimsley (SBN 216741) (sean.grimsley@bartlit-beck.com)
9  Sundeep K. (Rob) Addy (Pro Hac Vice) (rob.addy@bartlit-beck.com)
   **Bartlit Beck Herman Palenchar & Scott LLP**
10 1899 Wynkoop St., 8th Fl.
   Denver, CO 80202
11 Tel: (303) 592-3100
   Fax: (303) 592-3140
12
13 [Additional counsel of record listed on signature page]

14 *Attorneys for Plaintiff and Counterdefendant Tessera, Inc.*

                     UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16
                          OAKLAND DIVISION
17

18 | Tessera, Inc., | |
19 | Plaintiff and Counterdefendant, | |
20 | v. | Case Nos. 4:05-cv-04063-CW and 4:10-cv-04954-CW |
21 | Advanced Micro Devices, Inc., et al., | |
   | Defendants and Counterclaimants. | **Tessera's Memorandum of Points and Authorities in Opposition to ST's and Spansion's Motion to Extend Stay** |
22
23 | Spansion, Inc., et al., | |
   | Plaintiffs, | |
24 | v. | Filed concurrently herewith: Declaration of Sundeep K. (Rob) Addy |
25 | Tessera, Inc., | |
26 | Claimant. | |

27

28

# INTRODUCTION

ST and Spansion seek a partial stay of this action that would apply to only two out of a multitude of defendants while the rest of the case progresses forward. Nowhere in their moving papers do ST and Spansion explain why such a partial stay makes sense or how it would work despite the Court's express instructions to do so.[1] Extending the stay because of Tessera's bond forfeiture proceedings would be contrary to the plain language of 28 U.S.C. § 1659 ("Section 1659"). First, Section 1659 no longer applies once "the determination of the Commission becomes final," which occurred here when the Supreme Court denied the ITC respondents' petition for *certiorari*. Second, the bond forfeiture proceeding and the present case do not involve the "same issues"—the latter involves questions of infringement and validity whereas the former involves the limited question of enforcement of the ITC judgment. In actuality, ST's and Spansion's motion reflects little else other than a persistent strategy of delay to avoid the final resolution of this case.

# BACKGROUND

This case has been stayed since May 24, 2007, during the pendency of the ITC's 605 investigation. (Br. 2 [Doc. 939].) That investigation ended on May 20, 2009, when the ITC issued its final determination, as well as several limited exclusion orders ("LEOs") and cease-and-desist orders ("CDOs"), which specified the products that the respondents could no longer import or sell in the United States. The Federal Circuit affirmed the ITC's final determination, and the Supreme Court declined to review. *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331 (Fed. Cir. 2010), *cert. denied*, 80 U.S.L.W. 3066 (Nov. 28, 2011).

Prior to this appellate process, federal law allows for the President to review an ITC determination for a period of 60 days after it is issued but before it becomes entirely enforceable (and appealable). *See* 19 U.S.C. § 1337(j)(2). Under the statute, if the President

---

[1] *See* Addy Decl. Ex. 1, Case Management Conference Tr. 43:9-12 Jan. 4, 2012 ("[E]xplain to me why you actually want [a stay] and how you think it's going to work if you get it, given that everybody else is going to be going forward without you and that you will ultimately have to catch up to the same schedule.").

disapproves of an ITC determination for policy reasons, that determination ceases to have any force and effect. *Id.* However, during the pendency of the President's review, a respondent may continue to import and sell an excluded product so long as the respondent posts a bond. Once the review period expires and the ITC determination becomes final, the bond may be forfeited to the complainant. *Id.* § 1337(j)(3). Here, the 60-day review period passed without Presidential action. Tessera thus instituted bond forfeiture proceedings against ST and Spansion regarding their importation and/or sale of covered products during the 60-day presidential review period. (Br. Ex. A.)

## ARGUMENT

ST and Spansion attempt to use a collateral bond forfeiture proceeding, which is akin to collection of a judgment, as an excuse to halt this litigation. ST and Spansion rely on Section 1659, which requires a district court to stay civil action proceedings, at the request of an ITC respondent, if four distinct conditions are satisfied: (1) the proceeding before the Commission is under Section 337 of the Tariff Act of 1930; (2) the request to stay the civil action is made by a party that is also a respondent in the Section 337 proceeding; (3) the "determination of the Commission" is not yet final; and (4) the civil action involves "the same issues" involved in the proceeding before the Commission. *See* 28 U.S.C. § 1659(a).[2] The instant motion should be denied because ST and Spansion cannot satisfy the third or fourth requirements.

## I.     THE ITC DETERMINATION IS FINAL

A stay under Section 1659 is only effective "until *the determination* of the Commission becomes final." *Id.* (emphasis added). It is undisputed that the ITC's determination regarding

---

[2] The statute reads, in relevant part, "In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under Section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission . . . ." 28 U.S.C. § 1659(a).

1   the validity and infringement of the patents-in-suit has become final. (Br. 2-3.) To support

2   an extension of the stay, ST and Spansion must therefore argue that there is some other ITC

3   "determination" that is not yet final. The statute, however, does not require *every*

4   determination made by the ITC to be final for the stay to be lifted. Instead, it refers to "*the*

5   determination*," which is a reference to the central determination before the ITC of whether

6   a violation of 19 U.S.C. § 1337 ("Section 1337") has occurred and would result in issuance

7   of a CDO or LEO. Section 1337(c) specifies that "[t]he Commission shall determine, with

8   respect to each investigation conducted by it under this section, whether or not there is a

9   violation of this section . . . ."[3]. *See also id.* § 1337(b)(1) ("The Commission shall conclude any

10  such investigation and make *its determination* under this section . . . . (emphasis added)).

11       In *In re Princo Corp.*, the Federal Circuit held that the phrase "until the determination

12  of the Commission becomes final" means that the stay is effective until the Commission's

13  determination is no longer subject to judicial review. 478 F.3d 1345, 1355 (Fed. Cir. 2007). In

14  so holding, the Federal Circuit relied on legislative history that the purpose of the section

15  was to "address the possibility that infringement proceedings may be brought against

16  imported goods in two forums at the same time." *Id.* (citing H.R. Rep. No. 103-826(I) at 141

17  (1994)). A bond forfeiture proceeding is, of course, not an infringement proceeding (nor, as

18  explained below, does it involve an infringement analysis).

19       The Federal Circuit also noted that "interpreting § 1659 to permit the district court

20  proceedings to continue while the Commission proceedings are on appeal would result in

21  cumbersome on-again, off-again stays. It is unlikely that Congress intended such a result." *Id.*

22  The court thus recognized that Section 1659 sets out a single, clearly-discernible termination

23  point for the ITC proceedings upon which a stay would be based. Under ST's and Spansion's

24

25  [3] Furthermore, the subsection governing Presidential referral and bond forfeiture
    proceedings states that "[i]f *the determination* become final, the bond may be forfeited to the
26  complainant." 19 U.S.C. § 1337(j)(3) (emphasis added). This underscores that "the
    determination" is a reference to the ITC final determination, not a bond forfeiture
27  determination.

28                                       3

1  view of the statute, however, a stay would be lifted when the Supreme Court denies

2  certiorari, but must then be re-imposed *at any point in the future* if the complainant seeks any

3  kind of collateral relief (such as forfeiture of a bond under Section 1337(j)(3) or

4  enforcement of a remedial order under Section 1337(f)(2)) related to those administrative

5  proceedings.

6       Here, it is undisputed that the ITC's determination on infringement and validity of

7  the patents-in-suit is final. This forecloses the operation of the statute and, accordingly, the

8  instant motion.

9  **II.     THE BOND FORFITURE PROCEEDINGS DO NOT RAISE**

10         **THE "SAME ISSUES" PRESENT HERE**

11       ST's and Spansion's claim that an ITC bond forfeiture proceeding would involve the

12  "same issues" before this Court is incorrect. As set forth in Tessera's motion for bond

13  forfeiture ("ITC Brief" (attached to ST's and Spansion's brief as Exhibit A [Doc. 940-1])),

14  the only issues before the ITC are: (1) whether the respondents posted any bonds during the

15  60-day Presidential review period; (2) whether the respondents imported or sold products

16  that were subject to the CDOs or LEOs during that period; and (3) whether respondents'

17  posted bonds were not sufficient to cover all covered imports or sales during the Presidential

18  review period. (ITC Brief 12-13.)

19       In this case, of course, the issues are very different. This Court will be considering

20  whether Tessera's patents[4] are infringed by certain of ST's and Spansion's accused products.

21  That is a question long since passed upon by the ITC, the Federal Circuit, and the Supreme

22  Court. (Addy Decl. Ex. 2, Final ITC Determination 79 ("We find that all Respondents

---

23  [4] Three of the five patents asserted here were not asserted in the 605 ITC investigation. *See*

24  Notice of Investigation, *In The Matter of Certain Semiconductor Chips With Minimized Chip Package Size and Products Containing Same*, Inv. No. 337-TA-605, 72 Fed. Reg. 28,521 (May 21, 2007)

25  (scope of investigation defined by notice of investigation). Thus, any Section 1659 stay would not only be limited to certain *defendants*, it must also be limited to the overlapping

26  *patents*. *SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1065 (W.D. Wis. 2008). And even if Section 1659 required a stay as to those overlapping patents, which it does not, the

27  case could continue to proceed against ST and Spansion as to the remaining three patents.

28                          4

1    directly infringe the asserted claims of the '326 and '419 patent[s]."")); *Spansion, Inc.*, 629 F.3d

2    at 1353.

3         ST and Spansion argue that infringement is at issue in the ITC bond forfeiture

4    proceedings because the LEOs and CDOs cover "infringing products". (Br. 4-5.) But this

5    argument ignores the ITC's final determination underlying those orders, which established

6    specific objective criteria for identifying products the ITC had found to infringe.[5] In the

7    bond forfeiture proceeding, the ITC must determine only whether ST or Spansion imported

8    or sold products meeting those objective criteria during the Presidential review period, and,

9    if so, whether the bonds posted (or that should have been posted) should be forfeited to

10   Tessera. Patent infringement is simply not at issue. Rather, the bond proceeding involves

11   only the straightforward application of rulings already made by the ITC—not re-litigation of

12   infringement issues already resolved with finality, both at the ITC and on appeal.

13        In addition, a partial stay of this action that affects only some defendants and some

14   patents would disrupt the efficient resolution of this case, creating a second track of

15   proceedings for ST and Spansion that would threaten to delay and derail these proceedings.

16   ST and Spansion make no effort to explain how or why this Court could entertain their

17   request without prejudicing every other party in the case and wasting valuable judicial

18   resources.

19                              **CONCLUSION**

20        For the foregoing reasons, Tessera respectfully requests that the Court deny ST's and

21   Spansion's motion to extend the stay pursuant to 28 U.S.C. § 1659.

22

23

---

24   [5] Specifically, the products found to have infringed Tessera's patents are ball grid array chip
     packages (a) wherein at least one semiconductor chip is in a face-up orientation, (b) having a
25   laminate package substrate, (c) having a solder ball pitch of less than 1.27 millimeters, (d)
     where at least one terminal or solder ball is beneath (*e.g.*, within the periphery of) a
26   semiconductor chip in the package," (e) with at least 36 solder balls, (f) having a die attach
     modulus of 3.5 Giga Pascals or less, and (f) that are not flip-chip, package-in-package, or
27   tape-based products. (Addy Decl. Ex. 2, ITC Final Determination 10-11.)

28                                     5

DATED: January 13, 2012          By: /s/ Eric R. Olson

Gregory P. Stone
*gregory.stone@mto.com*
Ted G. Dane
*ted.dane@mto.com*
Katherine K. Huang
*katherine.huang@mto.com*
Andrew Song
*andrew.song@mto.com*
L. Ashley Aull
*ashley.aull@mto.com*
Eric P. Tuttle
*eric.tuttle@mto.com*
**Munger, Tolles & Olson LLP**
355 S. Grand Ave., 35th Fl.
Los Angeles, CA 90071-1560
Tel: (213) 683-9100
Fax: (213) 687-3702

Fred H. Bartlit, Jr.
*fred.bartlit@bartlit-beck.com*
Sundeep K. (Rob) Addy
*rob.addy@bartlit-beck.com*
Eric R. Olson
*eric.olson@bartlit-beck.com*
Sean Grimsley
*sean.grimsley@bartlit-beck.com*
**Bartlit Beck Herman Palenchar & Scott LLP**
1899 Wynkoop St., 8th Fl.
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140

Morgan Chu
*mchu@irell.com*
Benjamin Hattenbach
*bhattenbach@irell.com*
Ellison Shelton Turner
*eturner@irell.com*
**Irell & Manella LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067-4276
Tel: (310) 277-1010
Fax: (310) 203-7199

*Attorneys for Plaintiff and Counterdefendant Tessera, Inc.*