IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSERA, INC., | No. C 05-4063 CW |
| Plaintiff, | ORDER OVERRULING DEFENDANTS' OBJECTIONS TO NONDISPOSITIVE ORDER OF THE SPECIAL MASTER (Docket Nos. 1098 in Case No. 05-4063 and 228 in Case No. 12-692) |
| v. | |
| ADVANCED MICRO DEVICES, INC.; SPANSION, LLC; SPANSION, INC; SPANSION TECHNOLOGY, INC.; ADVANCED SEMICONDUCTOR ENGINEERING, INC.; ASE (U.S.), INC.; CHIPMOS TECHNOLOGIES, INC.; CHIPMOS U.S.A., INC.; SILICONWARE PRECISION INDUSTRIES CO., LTD.; SILICONWARE USA, INC.; STMICROELECTRONICS N.V.; STMICROELECTRONICS, INC.; STATS CHIPPAC, INC.; STATS CHIPPAC (BVI), LTD.; and STATS CHIPPAC, LTD., | |
| Defendants. / | |
| TESSERA, INC., | No. C 12-692 CW |
| Plaintiff, | |
| v. | |
| MOTOROLA, INC.; QUALCOMM, INC.; FREESCALE SEMICONDUCTOR, INC.; and ATI TECHNOLOGIES, ULC, | |
| Defendants. / | |
| AND ALL RELATED COUNTERCLAIMS / | |

Defendants Siliconware Precision Industries Co., Ltd. and Siliconware USA, Inc., STATS ChipPAC, Inc., STATS ChipPAC (BVI) Limited and STATS ChipPAC, Ltd., Freescale Semiconductor, Inc., Advanced Micro Devices, Inc., ATI Technologies ULC, Spansion, LLC, Spansion, Inc., Spansion Technology, Inc., ChipMOS U.S.A., Inc.,

1  ChipMOS Technologies, Inc., STMicroelectronics, Inc. and
2  STMicroelectronics N.V. object to a nondispositive discovery order
3  of the Special Master issued on October 24, 2012, which addresses
4  disclosure of confidential information to overseas experts.  The
5  Court considers Defendants' objections de novo and OVERRULES them.
6  Docket Nos. 1098 in Case No. 05-4063 and 228 in Case No. 12-692.
7       Defendants challenge the Special Master's order on three
8  bases.  First, they argue that section 7.8 of the stipulated
9  interim protective order precludes counsel from sending
10 confidential information outside the United States to anyone,
11 including to experts, and does not just limit its transmission to
12 foreign attorneys.  However, by its terms, section 7.8 restricts
13 only counsel from taking, removing, or accessing confidential
14 documents outside of the United States, and does not address
15 whether experts may access confidential information located on a
16 secure ftp site while they are outside the United States.  By
17 placing the material on a secure ftp site located in the United
18 States, counsel does not "take, access or remove (via electronic
19 means or otherwise)" the material outside the United States,
20 although if foreign attorneys working on the cases were to access
21 confidential information on the ftp site while outside of the
22 United States, this may constitute a violation of section 7.8.
23      Further, section 7.5 supports the Special Master's
24 interpretation.  In that section, the parties clearly prohibited
25 certain material from being "removed, accessed, taken or allowed
26 to be taken outside the United States" by anyone.  The parties
27 could have, but did not, make this provision broad enough to
28 encompass all confidential material, or material produced by one

2

1  party that, by contract with a third party, was restricted from
2  removal outside of the United States.  Further, if section 7.8 is
3  read as Defendants contend it should be, separate references to
4  "export controlled" material, including section 7.8, would be
5  rendered surplusage.
6      Second, Defendants argue that the Special Master erred by
7  applying section 7.6, which deals with objections to experts
8  themselves, to this dispute, and ignoring section 7.8.  Defendants
9  argue that section 7.6 is inapplicable, because they were not
10 objecting to the use of the foreign experts in their entirety and
11 that section deals with "resolving disputes involving objections
12 to experts themselves."  Mot. at 4.  Instead, they state that they
13 merely are arguing that much of the discovery material cannot be
14 given to the foreign experts for analysis.
15     The Special Master correctly found that section 7.6 is
16 applicable here.  According to its title, section 7.6 sets forth
17 "procedures for approving disclosure of 'confidential,' 'highly
18 confidential--attorneys' eyes only,' or 'highly confidential
19 financial--attorneys' eyes only' information or items to experts,"
20 precisely what Tessera seeks here.  A party may object that
21 disclosure of confidential material to an expert is inappropriate
22 for a variety of reasons.  For example, a party may argue that
23 "disclosure is not reasonably necessary for this litigation" as
24 required by section 7.2(c).  However, any objection to the
25 disclosure of confidential material is governed by the procedures
26 outlined in section 7.6, even if another section is also relevant
27 to the dispute.  Further, as discussed above and by the Special
28 Master, section 7.8 is inapplicable.  Finally, even if Defendants'

3

characterization of this section were accepted, in practical terms, their objection would mean that Tessera is unable to use certain individuals as experts in these cases.

Third, Defendants contend that the Special Master improperly ignored the issue of providing notice to third parties regarding the possible disclosure of their information overseas. Defendants argue that these third parties had "a legitimate expectation that their [confidential business information] would be protected pursuant to Section 7.8 and other sections of the" protective order. However, as stated above, other than for "export controlled" information, these third parties did not have a reasonable expectation that their information would never be taken outside the United States under any circumstances whatsoever. Further, although Defendants generally aver that there are such entities, they never specifically identify any such third parties, who were not also parties to this case and who had not received notice and an opportunity to be heard. In addition, under section 7.4 of the protective order, when Defendants believed that their disclosure of information to Tessera might violate a confidentiality obligation owed to a nonparty, they were required to provide written notification to the nonparty, and then inform Tessera if they received a response to the notification. Although Defendants may not have believed that their disclosure of this material to Tessera violated such an obligation at the time it was initially provided, if Defendants reasonably believed that disclosure did so after Tessera informed them of its interpretation of the protective order, Defendants could have provided notice to the nonparties. Defendants have offered no

4

evidence that they have done so or that they have received any objections from the nonparties.  Finally, the Special Master did not ignore the potential concerns of the third parties.  He specifically found that the security procedures identified by Tessera "are reasonable to preserve the confidentiality of the information, including defendants own information and any information from their clients that is contained therein."  Docket No. 1095 in Case No. 05-4063, 3.

Defendants' objections are overruled.

IT IS SO ORDERED.

Dated: November 21, 2012

_____
CLAUDIA WILKEN
United States District Judge