Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TESSERA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ADVANCED MICRO DEVICES, INC.; SPANSION, LLC; SPANSION, INC.; SPANSION TECHNOLOGY, INC.; ADVANCED SEMICONDUCTOR ENGINEERING, INC.; ASE (U.S.), INC.; CHIPMOS U.S.A., INC.; SILICONWARE PRECISION INDUSTRIES CO., LTD.; SILICONWARE USA, INC.; STMICROELECTRONICS N.V.; STMICROELECTRONICS, INC.; STATS CHIPPAC, INC.; STATS CHIPPAC (BVI), LTD.; and STATES CHIPPAC, LTD., <br><br> Defendants. | CASE NO. 4:05-CV-04063-CW <br><br> REPORT AND RECOMMENDATIONS REGARDING ST'S MOTION TO STRIKE REPORT OF TESSERA'S INFRINGEMENT EXPERT <br><br> JAMS REF NO.1100049599 |

To the Honorable Claudia Wilken, United States District Judge,

The undersigned special master respectfully submits the following report and recommendations:

ST filed a motion to strike portions of the report of Tessera's infringement expert Dr. Fan. Tessera opposed the motion, with a brief and declarations. The motion was argued and

submitted on August 22, 2013. There was no court reporter at the oral argument.

This proposed decision on the motion is presented to Your Honor as a report and recommendations, rather than as an order. The ground for the motion is Tessera's alleged failure to produce certain documents, either timely or not at all, which were arguably portions of documents generated by computers during the process of Dr. Fan's Finite Element Analysis ("FEA") of ST's accused infringing products. To that extent, the motion is within the discovery jurisdiction delegated to the special master. However, the relief requested by ST, the striking of virtually all of the expert's report, would undoubtedly preclude any use of the report, and perhaps also preclude Dr. Fan's testimony at trial. Therefore, the motion concerns trial and evidentiary matters, and this decision is presented in the form of a report and recommendations.

The relief requested by the motion is set forth on pages one and two of ST's letter motion of August 5, 2013. The three principal forms of requested relief are to "strike [the] portions of Dr. Fan's report…" ST does not expressly state <u>how much</u> of the expert's report would be stricken if the motion were granted. But Tessera says that the result would be the striking of all of Dr. Fan's conclusions regarding Tessera's infringement claims, and approximately one half of Tessera's claims for royalties under license agreements. From the evidence that the special master has seen during the motion, Tessera's estimate appears accurate. After the hearing, ST submitted two alternative forms of relief, which are discussed below.

The record of this motion and opposition is significant, and indeed largely controlling: ST's motion is not supported by any affidavits or declarations regarding the procedures for or the documents generated by the FEA. An FEA is, simply stated, a computer-controlled simulation of ST's products under various assumptions. However, ST has not submitted <u>any</u> declarations or affidavits by scientists regarding FEA. What the special master is told by ST about the procedures and documents generated is only what is said in the <u>letter</u> motion of August 5 by ST's <u>attorneys</u>. On the other hand, Tessera has submitted declarations or affidavits of four scientists directly involved in the FEA testing: Dr. Xuejun Fan, the author of the expert report, Dr. Bradley Davidson, Mr. Vipul Kinariwala, and two by Mr. Joel Kindt.

The special master is usually willing to accept the statement of attorneys of record,

without the necessity for verifications or declarations under penalty of perjury, regarding facts within their knowledge. But the procedures and documents of an FEA computer simulation are highly technical and are not within the usual experience of attorneys. That is indeed why the parties use and present the evidence of experts in cases involving FEA. So the special master must look to the evidence presented in the scientists' declarations for resolution of issues regarding what documents were generated, what they contained, their relationships to other documents, the significance of any loss, the procedures of the FEA, and similar scientific and technical matters. Therefore, Tessera's record in those regards is uncontroverted by ST in this motion, and must stand as the only record on those subjects for the special master to consider.

ST nevertheless argues that three groups of documents, listed in Exhibits A, B, and C to its motion papers, were not produced or were produced late (that is, after Dr. Fan's report was sent to ST).

After reviewing the record and the oral arguments, the special master finds and concludes that all three groups of documents about which ST complains, perhaps with a few immaterial exceptions, have now been produced by Tessera to ST in one electronic form or another. Those productions are itemized in Exhibit 3A to Tessera's opposition, entitled "Final simulations of ST packages." The few documents which Tessera may not have produced to ST are discussed on p. 4 of Tessera's brief and in Tessera's Exhibit 4, 32. The special master is uncertain as to whether this information has now been produced. But in any event, ST has made no showing of any materiality of the few "missing" items to ST's requested remedy of striking the report.

Some additional comments are appropriate. As to the documents referred to in ST's Exhibits, ST complains that Tessera has "destroyed" the .err files. Without having to decide whether all of those files have in fact been produced, the record establishes that the same information is contained in the .out files, all of which have been produced to ST. ST's Exhibit C also refers to the .out files. The special master believes that Tessera's Exhibit 3A demonstrates that all of the .out files for the simulations addressed in ST's motion, both final and preliminary, have now been produced. ST also argues that documents it entitles "input scripts" were not produced. These are apparently listed in ST's Exhibit B, which mentions input, .txt, and .rst

files. But the record demonstrates that on the day that Tessera produced Dr. Fan's report, it also produced the scripts used to run the simulations of ST's packages, and that Tessera has now produced all of the scripts and the corresponding result files. Finally, regarding any of the sub-files for which ST argues there are missing documents or information: because ST has all of the input scripts, ST can obtain the information in the sub-files by running those scripts on its own equipment.

In summary, as to all of the files allegedly not produced to ST, Tessera has demonstrated through affidavits and declarations that those files, possibly with a few immaterial exceptions, have been produced. And if ST does not have immediate easy access to them, the same information is replicated in the .out files and/or in the input scripts, which ST has.

As noted, ST subsequently filed two alternative proposed forms of orders. The cover letter of August 23, 2013 states that ST has filed them "in light of the admissions by Tessera concerning the FEA files...." However, the special master interprets the subsequent filing as really an admission by ST that the relief requested in the motion was inappropriate and not supported by an adequate record. In any event, the special master concludes that all of ST's "striking" relief regarding Dr. Fan's report should be denied for the reasons discussed above.

As to ST's argument that some documents were produced by Tessera later than Dr. Fan's report, ST is correct. But as stated, ST now has them. And the special master is prepared to consider adjustments to the present schedule (e.g. dates for ST's rebuttal expert's report, and dates for the depositions of the experts) to accommodate the time concerns. However, when the special master suggested such adjustments during the oral argument- and even when ST later submitted its alternative forms of orders- ST did not request any date adjustments. Rather, ST's motion still requests striking the expert's report.

It is therefore recommended that ST's motion to strike portions or all of the report of Dr. Fan be denied. ST's arguments may nevertheless be appropriate for its rebuttal expert's report and for its cross-examination of Dr. Fan.

An additional request is made in ST's motion. That is, for the production of an article written by Dr. Fan and others for Intel Corporation in a separate matter. The article was listed in

the materials which Dr. Fan reviewed and relied upon in his report. However, Dr. Fan subsequently stated that he did not rely on this article in forming his opinions, and that he incorrectly included it in the list of materials. Dr. Fan does have a copy of the article, but it is allegedly proprietary to Intel and contains confidential information of Intel. Tessera has agreed to use its good faith best efforts to obtain permission from Intel to produce the article to ST, and to advise ST by August 29, 2013.

Respectfully submitted,

Dated: August 28, 2013

ST's objections having been considered, the report and recommendation of the special master is Approved and Adopted.

Dated: September 12, 2013

Hon. Claudia Wilken, U.S.D.J.